**In re GRAND JURY INVESTIGATION.**

**Appeal of Patrick R. DiLORETO.**

**No. 90–3062.**

United States Court of Appeals,
Third Circuit.

Argued March 12, 1990.

Decided May 1, 1990.

William P. Weichler (argued), Erie, Pa., for appellant.

Thomas W. Corbett, Jr., U.S. Atty., Paul J. Brysh (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee, U.S.

Before SLOVITER, BECKER and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal presents the question whether someone found in civil contempt for failure to testify before a grand jury is entitled to know the commencement and termination dates of that grand jury. The district court denied contemnor's motion for disclosure of the dates. We will reverse.

### I.

Appellant Patrick DiLoreto was convicted of various drug and income tax violations and sentenced to twenty years imprisonment.[1] Although his conviction was vacated and remanded on direct appeal, *United States v. DiLoreto*, 888 F.2d 996 (3d Cir.1989), appellant remains in custody pending a new trial. In January 1989, after serving only three months of his prison term, appellant was subpoenaed to appear before the federal grand jury that was investigating the activities of one Merchie C. Calabrese, Jr.[2] When appellant invoked the privilege against self-incrimination, the government sought and obtained an order granting appellant use immunity and compelling him to respond. *See* 18 U.S.C. §§ 6002, 6003 (1988). This order notwithstanding, appellant refused to answer questions before the grand jury. The government therefore moved for a Rule to Show Cause why he should not be held in contempt.

Appellant waived a hearing and informed the court (through counsel) that he had no intention of answering questions. The court thereupon found appellant in contempt of court and remanded him to the custody of the United States Marshal until such time as he should purge himself of the contempt by agreeing to answer questions, or eighteen months, or the remaining life of the grand jury, whichever was least. Appellant has been in various local jails since that time. On October 6, 1989, appellant moved for disclosure of the commencement and termination dates of the grand jury. The district court, on February 8, 1990, denied the motion without opinion. This appeal followed.

### II.

#### A.

██ Federal Rule of Criminal Procedure 6(e), which codifies the longstanding policy of secrecy surrounding federal grand jury proceedings, obviously constrains the right of public access to grand jury records. More particularly, Rule 6(e)(2) imposes a rule prohibiting disclosure of "matters oc-

---

1. DiLoreto was convicted of conspiracy to possess and distribute cocaine, 21 U.S.C. § 846 (1988); operating a continuing criminal enterprise, *Id.* § 848; several substantive cocaine distribution counts, *Id.* § 841(a)(1); use of a communication facility to facilitate a narcotics transaction, *Id.* § 843(b); tax fraud, 26 U.S.C.

§ 7201 (1982); and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (1988).

2. At DiLoreto's trial, the government alleged that Calabrese was the source of the cocaine that appellant was distributing in the Erie, Pennsylvania area.

curring before the grand jury." The exception to the rule of secrecy, Rule 6(e)(3), and the sealing requirement, Rule 6(e)(6), also pertain only to "matters occurring before the grand jury."

We must be wary, however, of an overly strict construction of what matters actually "occur[ ] before the grand jury," as it has been correctly held that some non-substantive incidents of grand jury proceedings must be kept secret. For instance, although criminal defendants generally have the right to inspect jury selection records under 28 U.S.C. § 1867(f) (1982), they are not normally entitled to the names of the members of the grand juries that indicted them. *See United States v. McLernon*, 746 F.2d 1098, 1122–23 (6th Cir.1984); *United States v. Carlock*, 606 F.Supp. 491, 492–93 (W.D.La.1985); *United States v. Vaughn*, 510 F.Supp. 206, 209–10 (D.N.J. 1981). Obviously, the disclosure of the names and addresses of the grand jurors could facilitate intimidation of or retaliation against those grand jurors.

We explicated the theory behind the Rule 6 secrecy doctrine in *In re Grand Jury Investigation (Appeal of New Jersey State Commission of Investigation)*, 630 F.2d 996 (3d Cir.1980), *cert. denied sub nom. Rittenhouse Consulting Enterprises Ltd. v. New Jersey State Commission of Investigation*, 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981):

> [T]he policy of secrecy is not absolute. Rule 6(e) shields solely 'matters occurring before the grand jury.' It is designed to protect from disclosure only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process.

630 F.2d at 1000 (citations omitted).

We note, in light of that standard, that disclosure of the commencement and termination dates of the grand jury does not disclose the essence of what took place in the grand jury room. Additionally, disclosure of such information does not violate the freedom and integrity of the delibera-

tive process of the grand jurors. Furthermore, American courts have long recognized a general right of access to court records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). In *Nixon*, the court found the interest necessary to support the access right in, *inter alia*, "the citizen's desire to keep a watchful eye on the workings of public agencies." *Id.* 98 S.Ct. at 1312. Appellant, who is incarcerated as the result of the grand jury's process, has more than the citizen's right to seek the grand jury's termination date. *Cf. In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778 (9th Cir.1982) (movants, as members of general public as well as subjects of grand jury investigation, had standing to seek access to ministerial records of grand jury).

### B.

The government's argument for non-disclosure is that:

> The disclosure of information on the term of [a] grand jury may tend to indicate the target date for an indictment and therefore the probable length of the investigation. Such information may facilitate the escape of prospective defendants and efforts to frustrate or to interfere with the investigation. A target or a witness under his influence may be quite willing to resist grand jury subpoenas or to withhold evidence if he knows that, if he does so for a few months, the government may well decide to seek an indictment without the evidence. But he may be less willing to engage in such actions if he thinks that he may have to continue his resistance for more than a year. And a recalcitrant witness, such as DiLoreto, may be willing to be confined for contempt for two or three months, but not for eighteen.

Brief for United States at 9.

Although initially appealing, this argument comes apart under scrutiny. Since it is clear that the government may apply to extend the life of the grand jury,[3] or failing

---

**3.** The special grand jury statute, 18 U.S.C. §§ 3331–3334 (1988), provides that at the expi-

that, to convene a new grand jury and bring the recalcitrant witness before it (with a possible 18–month sanction for failure to testify), the impending termination of a grand jury offers a witness, who may soon find himself in the same predicament all over again, little incentive not to cooperate. Indeed appellant persuasively turns the government's argument to his own account, pointing out that:

> the [termination] information may enhance the coercive intent of the recalcitrant witness statute. For, faced with a lengthy period of incarceration, credit for which does not accrue against his underlying federal sentence, Mr. DiLoreto may very well choose to purge himself of the contempt citation.

Brief for Appellant at 17.

Appellant argues, even more persuasively, that disclosure of the jury's termination date is necessary to ensure that he is held in custody no longer than necessary. He submits that it is contrary to the adversary nature of our judicial system to require him to rely upon the good faith and integrity of government prosecutors to inform him when the grand jury term expires. If the information is in the hands of the witness as well as the government, the witness may take appropriate action upon the expiration of the grand jury. We note that, even conceding the government's good faith, mistakes are not infrequent in the correctional setting,[4] and it is quite possible that a grand jury may expire without the jailer knowing about it. If the contemnor is informed of the date of his release, the likelihood of a wrongful extension of his term will be lessened significantly. The foregoing reasons support our conclusion that a contemnor is entitled to disclosure of

the grand jury's commencement and termination dates.

## C.

The Supreme Court has adopted the following statement of the reasons for grand jury secrecy:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect an innocent accused who is exonerated from disclosure of the fact that he has been under investigation and from the expense of standing trial where there was no probability of guilt.

*United States v. John Doe, Inc. I,* 481 U.S. 102, 109 n. 5, 107 S.Ct. 1656, 1661 n. 5, 95 L.Ed.2d 94 (1987).[5] *See also Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 219 n. 10, 99 S.Ct. 1667, 1673 n. 10, 60 L.Ed.2d 156 (1979); *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 985–86 n. 6, 2 L.Ed.2d 1077 (1958); *United States v. Educational Development Network Corp.,* 884 F.2d 737, 741 (3d Cir.1989).

Examining these policies undergirding grand jury secrecy, we conclude that none weighs against disclosure of the termination date. Under these circumstances, the right of public access, discussed above in Part IIA, is sufficient to require disclosure.[6] Strongly corroborating this view is

---

ration of an 18–month term, a district court, upon determining that the business of the special grand jury has not been completed, may extend the term for additional periods of six months, so long as the total term (18 months plus additions) does not exceed 36 months. *Id.* § 3331(a).

**4.** Such institutional mistakes are frequently the subject of litigation. *See, e.g., Green v. Christiansen,* 732 F.2d 1397 (9th Cir.1984); *United*

States v. James, 532 F.2d 1161 (7th Cir.), *cert. denied,* 429 U.S. 840, 97 S.Ct. 112, 50 L.Ed.2d 107 (1976).

**5.** The Court adopted this statement from our decision in *United States v. Rose,* 215 F.2d 617, 628–29 (3d Cir.1954).

**6.** Indeed it would appear likely that a public interest group seeking to monitor grand jury practice would have a right to such information.

a survey made by counsel in this case at the request of the court, which reveals that in the vast majority of United States District Courts, the commencement and termination dates of the grand jury are matters of public record.[7]

### III.

While there is a paucity of judicial authority in this area, the one case we have found, *In re Special Grand Jury (for Anchorage, Alaska),* 674 F.2d 778 (9th Cir. 1982), supports our result. In that case, suspects of the grand jury investigation sought disclosure of ministerial grand jury records. Observing that the whole grand jury secrecy doctrine is not encapsulated within the four corners of Rule 6(e), and that the key question is whether the proposed order would violate the secrecy doctrine even though it did not violate Rule 6(e), the court held that, absent specific and substantive reasons, members of the public were entitled to access to ministerial records in the files of the district court having jurisdiction over the grand jury. *See Id.* at 780–81. *Accord,* S. Beale & W. Bryson, 2 *Grand Jury Law and Practice* § 7.06, at 30 n. 2 (1986) (ministerial grand

jury records, such as records reflecting empaneling and extension of grand jury, are not within reach of Rule 6(e) because they reveal nothing of substance about the grand jury's investigation).[8]

 As we have explained above, no specific or substantive reasons militate against disclosure here. We add that nothing in the recalcitrant witness statute, 28 U.S.C. § 1826 (1988), either expressly or impliedly precludes disclosure of the commencement and termination dates of an empaneled grand jury. The statute does nothing more (or less) than to permit the district court to incarcerate a recalcitrant witness for the term of the grand jury, including extension of eighteen months, whichever is less. *Id.* § 1826(a). The statute simply does not affect the outcome of this case.

### IV.

It is undoubted that the district courts have supervisory authority over the grand juries in their districts. *See In re Grand Jury,* 821 F.2d 946, 952 (3d Cir.1987), *cert. denied sub nom. Colafella v. United States,* 484 U.S. 1025, 108 S.Ct. 749, 98

---

**7.** The survey disclosed the following:

#### A. *Third Circuit*

In the Eastern District of Pennsylvania, the Assistant United States Attorneys generally disclose the termination dates of grand juries to civil contemnors on a voluntary basis. . . .

In the Middle District of Pennsylvania and in the District of New Jersey, the commencement dates and any extensions are generally available on the public record. In the Western District of Pennsylvania, however, all grand jury orders are kept under seal.

In Delaware, this matter has not been raised in recent years. Grand jury empanelment orders are *not kept under seal.* In the Virgin Islands, there have not been any grand juries in a number of years.

#### B. *Other Circuits*

In six districts, Assistant United States Attorneys voluntarily disclose grand jury termination dates to civil contemnors. These districts are: D.W.Va., N.D.Ohio, D.Wis., E.D.La., E.D.Cal. and D.Hawaii.

In eleven districts, grand jury commencement dates and extensions are matters of public record. These districts are: D.Me., D.R.I., E.D.N.C., W.D.Ky., M.D.Tenn., S.D.Fla., D.Minn., N.D.Ia., W.D.Mo., D.Neb., and E.D.Wash.

In three districts, the United States Attorney will not disclose the commencement or termination dates of grand juries. The information is technically public, but would be very difficult to obtain without knowledge of certain other information, i.e., the designation of the panel sitting on a given day, that is not generally available. These districts are: E.D.Tex., S.D.Tex., and N.D.Cal. In addition, grand jury extension orders are sometimes placed under seal, upon motion of the United States Attorney, in the Eastern District of Texas.

In three districts, all grand jury orders are kept under seal. Accordingly, the United States Attorney will not disclose commencement and termination dates of grand juries. There has been no litigation on the issue in recent memory. These districts are: E.D. Mich., N.D.Ind., and D.Nev.

Finally, in the Northern District of Alabama, grand jury commencement dates are matters of public record.

Appellee's Letter Memorandum (March 6, 1990).

**8.** In *United States v. Hubbard,* 474 F.Supp. 64 (D.D.C.1979), the court granted the defendants access to the date upon which the grand jury completed its term in the absence of objection by the government, though in that case the grand jury's term was over. *See Id.* 86.

L.Ed.2d 762 (1988). The government argues that although the district courts may entertain requests for disclosures about the grand jury for legitimate purposes, their dispositions of such requests should be reviewable only for abuses of discretion. *See In re Grand Jury Proceedings,* 507 F.2d 963, 967 (3d Cir.) (abuse of discretion standard applies to district court's acceptance of required affidavit), *cert. denied sub nom. Schofield v. United States,* 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975).

We will assume that our scope of review is deferential. We are nonetheless satisfied, for the reasons set forth above, that appellant was entitled to know when the grand jury would terminate, and that the district court abused its discretion in refusing to disclose that information.

The order of the district court will be reversed, and the case remanded to the district court for further proceedings consistent with this opinion.

SLOVITER, Circuit Judge, dissenting.

The majority opinion presents some good reasons why the Federal Rules of Criminal Procedure or even the local rules of the district court would make available to a grand jury witness information regarding the life of the grand jury before which the witness is called to testify. Were I in a rule-making position, I might cast my vote along with the majority for that position. However, I see nothing in the Federal Rules of Criminal Procedure which adopts the position taken by the majority. Moreover, the district court from which this case comes, unlike those to which the majority refers, has not adopted a rule or followed the practice of making such information generally available.

Under these circumstances, I believe the issue is not whether there are any policies weighing against disclosure of the termination date. *See* maj. at 183. Instead, since we sit as an appellate court and not as a policy-making body, the issue is whether the appellant has shown any right to the information strong enough to override the decision of the judges of that district that such information should not be made available. The majority has failed to convince

me that there is any grounding for such a right.

The majority relies on two bases for finding a right for the witness to receive the information. First, it refers to the right of public access to court records. Although I embrace the principle, *see Bank of America Nat'l. Trust & Savings Ass'n. v. Hotel Rittenhouse Assoc.,* 800 F.2d 339 (3d Cir. 1986); *United States v. Criden,* 648 F.2d 814 (3d Cir.1981), neither this court nor the Supreme Court has held it applicable to grand jury materials which have traditionally been viewed as presenting a different situation. The second basis to which the majority refers is the right of the witness not to be held beyond the jury's termination date. I am unconvinced that the public dissemination of the grand jury dates is necessary to accomplish this. A motion or petition to the presiding judge should suffice.

If we were to consider policy reasons, then I could not completely discount the government's position on the merits. A witness such as this appellant, who has been obdurate in refusing to answer questions, does not have a particularly compelling position upon which to ground his claim for access. The applicable statute has been drafted to provide a strong disincentive to a witness who, after being given immunity, still refuses to disclose the information needed by the grand jury. The witness' obligation, plain and simple, is to answer the questions whether he faces one week or seventeen months additional incarceration. It is for the legislature or the rule-makers to weigh the reasons for disclosure against the government's argument that disclosure detracts from the strong compulsion to testify which underlies the immunity statute or presents some other problem inimical to the need for secrecy. In the absence of any right granted in rule, statute or public policy, we should not interfere with the discretion of the district court to keep the commencement and termination dates of the grand jury secret. Therefore, I respectfully dissent.